CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 22 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CARLA A. CLEHM, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:16-CV-0012 |
| BAE SYSTEMS ORDNANCE SYSTEMS, INC., | ) By: Michael F. Urbanski<br>United States District Judge |
| and | ) |
| JOSHUA LINKOUS | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This is an employment action arising under both federal and state law. Plaintiff Carla A. Clehm ("Clehm") filed her complaint on January 13, 2016, alleging she was sexually assaulted by a coworker, defendant Joshua Linkous ("Linkous"), while employed by defendant BAE Systems Ordnance Systems, Inc. ("BAE"). The complaint pleads two counts: Count I alleges a claim for sexual discrimination and harassment against BAE under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, et seq., and Count II alleges assault and battery against BAE and Linkous under Virginia common law.

Before the court is BAE's motion to dismiss filed pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 15. BAE moves to dismiss Count II, on the grounds that respondeat superior is inapplicable to Clehm's assault and battery claim.

1

Accordingly, BAE argues there is no basis for imposing assault and battery liability against it. For the reasons set forth below, BAE's motion, ECF No. 15, will be **GRANTED.**

I.

BAE operates the Radford Army Ammunition Plaint (the "Arsenal") in Radford, Virginia. Both Clehm and Linkous worked at the Arsenal from early 2014 to 2015. Clehm alleges that Linkous worked in the Tub House within the Nitrocellulose Area ("the NC Area") for part of his employment. Clehm alleges two instances of harassment, one on May 19, 2014 and the other on or about June 5, 2014. On May 19, Clehm claims Linkous came up behind her as she was leaving a building at work and told her he needed to ask her something. When she tried to walk away, Linkous grabbed her clothing, pulled her towards him, and repeatedly questioned her about his wife's supposed infidelity. He then suggested they have sex as revenge against his wife. Clehm said she was not interested, walked away, and reported the encounter to human resources. Clehm alleges she was sexually assaulted and battered by Linkous on June 5 after visiting her locker. Linkous allegedly forced her into a small room, slammed her against the wall, kissed her, and forced his hands into her coverall pockets. Clehm claims she feared for her life and was only able to leave when she told Linkous that coworkers were waiting for her. Linkous subsequently pled guilty to criminal charges of sexual assault and battery of Clehm and other female coworkers, including the incident involving Clehm on June 5.

II.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal when a plaintiff fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6)

2

motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

A court should construe factual allegations in the nonmoving party's favor and will treat them as true, but is "not so bound with respect to [the complaint's] legal conclusions." Dist. 28, United Mine Workers, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085–86 (4th Cir. 1979). Indeed, a court need not accept either "legal conclusions drawn from the facts" or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

### III.

In relevant part, Clehm alleges in Count II that

> Linkous' inappropriate and unwanted touching and related conduct also constitutes assault and battery in violation of Virginia common law for which BAE is directly and vicariously liable under the doctrine of respondeat superior and otherwise under Virginia common law.

ECF No. 1, at ¶ 42. Clehm further states she "suffered and will continue to suffer pecuniary loss, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss" and defendants acted with "actual malice toward plaintiff or with reckless

3

disregard of the protected rights of the plaintiff so as to support an award of punitive damages." Id. at ¶¶ 43-44.

BAE's argument to dismiss Count II is straightforward. BAE asserts it cannot be held vicariously liable for the tortious actions of Linkous because Clehm has not alleged that Linkous was performing employment duties at the time of the alleged assaults. Terming Linkous' behavior a "marked and unusual . . . deviation from the employer's business," BAE argues that respondeat superior liability cannot lie. ECF No. 16, at 6. The court agrees.

Under Virginia law, "an employer is liable [under the doctrine of respondeat superior] for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." Plummer v. Ctr. Psychiatrists, Ltd., 252 Va. 233, 235, 476 S.E.2d 172, 173 (1996). An employer's vicarious liability for an employee's actions arises from the tort being committed as that employee "executed the service for which he was engaged." Henderson v. White's Truck Stop, Inc., No. 6:08-CV-00042, 2011 WL 1627120, at *7 (W.D. Va. April 29, 2011).

In determining whether respondeat superior can be used to hold BAE liable for assault and battery, this court must decide if Linkous' behavior, egregious as it is alleged to be, was "within the ordinary course of [the employer's] business." Gina Chin & Assocs., Inc. v. First Union Bank, 260 Va. 533, 543, 537 S.E.2d 573, 578 (2000); see also Jones v. Tyson Foods, Inc., 378 F. Supp. 2d 705, 713 (E.D. Va. 2004) (explaining that "courts must determine whether the activity that gave rise to the tortious act was within the scope of employment"), aff'd, 126 F. App'x 106 (4th Cir. 2005). If a plaintiff demonstrates that an employment relationship exists, the employer bears the burden of demonstrating that its

4

employee was not acting within the scope of his employment when he committed the tort. Gina Chin, 260 Va. at 542, 537 S.E.2d at 578. If the conduct represents a "marked and unusual . . . deviation from the employer's business," then the employer cannot be liable for such conduct. Id. Importantly, respondeat superior liability may not be imposed "solely on allegations that the harassment took place at the work place and during work hours." Tyson Foods, 378 F. Supp. 2d at 713.

In the present case, the only allegations connecting Linkous' behavior to BAE are the time and place of the harassment. Clehm has alleged scant details concerning Linkous' employment—only that he works in the Tub House, within the NC Area. ECF No. 1, at ¶ 25. There is no allegation that either individual was performing any employment duties at the time of the assaults. Indeed, the complaint does not allege that either assault happened in the NC Area or the Tub House, only that Linkous assaulted Clehm once as she was leaving work and once after she visited her locker. Liability under respondeat superior may not be based on the bare allegation that Linkous assaulted Clehm on BAE's premises. As the cases consistently teach, respondeat superior is applicable only where the facts allege that the perpetrator committed the assaults while performing his job.

Tyson Foods and Meade v. Johnston Mem'l Hosp., No. 1:10-CV-00024, 2010 WL 3463639 (W.D. Va. Sept. 2, 2010), cases where the courts dismissed assault and battery claims brought against two employers on the basis of respondeat superior, provide apt comparisons. In Tyson Foods, a production worker at a poultry processing plant was sexually assaulted and battered by the Shift Human Resources Supervisor when he called the plaintiff into his office. 378 F. Supp. 2d at 710. The district court dismissed the plaintiff's

5

claim against the plant, finding the plaintiff "failed to allege that the [tortious behavior] was within the scope of [the employee's] employment . . . [because the employee] was not engaged in his workplace duties [during the alleged attack]." 378 F. Supp. 2d at 714. Likewise, in Meade, the plaintiff, a phlebotomist, alleged that a registered nurse ("RN") sexually harassed her while both were on duty; because the plaintiff did not allege the harassment took place while, for instance, the RN was assisting patients or interacting with the plaintiff in a supervisory capacity, the plaintiff's allegations did not survive a motion to dismiss. 2010 WL 3463639, at *1, 4. Both cases were dismissed because the employees' bad acts were significant deviations from their workplace duties. Tyson Foods, 378 F. Supp. 2d at 714; Meade, 2010 WL 3463639, at *4.

Similarly, in Blair v. Defender Servs., Inc., 386 F.3d 623, 624 (4th Cir. 2004), the Fourth Circuit Court of Appeals addressed whether a female university student could hold an employer liable under respondeat superior for a physical assault committed by an employee. The court declined to do so, finding the physical assault had nothing to do with the employee's work. Id. at 627. The court reasoned "the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose respondeat superior liability on the employer." Id. Although Blair was decided on summary judgment, its reasoning applies with equal force to the present case, pending on a motion to dismiss, and lacking any facts to suggest Linkous was engaged in workplace duties at the time of the assault. Id.

For her part, Clehm argues that "the law concerning corporate liability is well-established in the Commonwealth," pointing to Commercial Business Systems, Inc. v.

6

BellSouth Services, Inc., 249 Va. 39, 453 S.E.2d 261 (1995), Plummer v. Center Psychiatrist, Inc., 252 Va. 233, 476 S.E.2d 172 (1996), and Majorana v. Crown Cent. Petroleum, 260 Va. 521, 539 S.E.2d 426 (2000).[1] ECF No. 19, at 4. BellSouth involved claims for statutory conspiracy and other business torts, not sexual assault in the workplace. As such, BellSouth has limited relevance, standing only for the general proposition that an employer may be held liable for an employee's "willful and malicious acts . . . committed while [he] was performing his duties . . . in the execution of the services for which he was employed." BellSouth, 249 Va. at 46, 453 S.E.2d at 266.

Although both Plummer and Majorana allege sexual assault in the workplace, these cases differ from Clehm's because both assaults were tied directly to the employee's job duties. For example, in Plummer, a therapist engaged in an improper sexual relationship with a patient during a counseling session. Because the act occurred while the psychologist was "performing his duties . . . for which he was employed" and his "education, experience, and knowledge of the plaintiff" enabled him to commit the act, a question of fact existed as to whether this act was within the scope of his employment. As such, the court reversed the trial court's grant of a demurrer. 252 Va. at 237, 476 S.E.2d at 174. The only enablement Linkous received from his employment at BAE was putting him in this same general location as Clehm. Unlike the defendant in Plummer, Linkous did not use the duties of his employment "to overcome [the plaintiff's] will." Id. at 237; 476 S.E.2d at 175.

---

[1] Clehm also cites Richmond Newspapers, Inc. v. Hazelwood, 249 Va. 369, 457 S.E.2d 56 (1995) to support her position. This case is inapposite. Richmond Newspapers addressed whether an incident of "goosing" arose out of the plaintiff's employment as required by the Virginia Workers Compensation Act and whether the employer had negligently hired and retained workers. Id. Neither issue is present in the case at hand.

7

Likewise, Majorana involved sexual assault against the plaintiff by a Crown Petroleum employee as she attempted to purchase gasoline. 260 Va. at 524, 539 S.E.2d at 427. The employee "moved from behind the counter, lunged at [the plaintiff], and attempted to kiss her." Id. The Virginia Supreme Court reversed the lower court's grant of summary judgment for the defendant. Id. As in Plummer, the sexual assault in Majorana arose directly out of the employer's duties for the employer. In the present case, Clehm alleges no facts to suggest any connection between Linkous' behavior and his function as an employee of BAE beyond his location and the time of the incident. ECF No. 1, at ¶¶ 16-19. As such, Clehm's allegations fail to state a claim.

Finally, Clehm asserts the decisions of the Supreme Court of Virginia establish the broad brush principle that a master is liable for the intentional torts committed by servants, and federal courts have not followed state law. ECF No. 19, at 12. In support, Clehm points to Gina Chin, in which the Virginia Supreme Court noted that Virginia courts have "consistently held that proof of the employment relationship creates a prima facie rebuttable presumption of the employer's liability." 260 Va. at 542, 537 S.E.2d at 577. This argument lacks merit. Gina Chin is a very different case than presented here. In Gina Chin, the plaintiff sued a depositary bank and sought to hold it liable for the criminal acts of a teller who deposited forged checks into another's personal account. 260 Va. at 537, 537 S.E.2d at 573. By definition, the teller could not have committed these acts of forgery if he had not committed them within the scope of his employment. See id. at 545, 537 S.E.2d at 579. Indeed, Gina Chin recognizes a range of potential scenarios in the workplace, with some assaults involving only a "slight deviation from the employer's business," others representing

8

a "marked and unusual" deviation. Id. at 544, S.E.2d at 578. Other than the mere fact that the assault took place at BAE, Clehm alleges nothing to link Linkous' duties owed to his employer with the tortious conduct. To allow Clehm's case to proceed against BAE in the absence of any allegation that Linkous was performing his duties for BAE at the time of the assault would render BAE strictly liable for its employee's intentional torts. Contrary to Clehm's argument, such a conclusion would be inconsistent with the holding in Gina Chin and Virginia precedent.

In short, the cases make a clear distinction between an employee who commits an assault while performing his work duties, resulting in respondeat superior liability, and an employee who, while at work, commits an assault unrelated to his duties, resulting in no respondeat superior liability. See Blair, 386 F.3d at 626; Meade, 2010 WL 3463639, at *4. Though the court assumes all facts in the complaint to be true and draws all reasonable inferences in the light most favorable to the nonmoving side, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). There are no facts supporting vicarious liability against BAE under a respondeat superior theory in this case.

## IV.

For the reasons set forth above, Clehm has failed to establish that BAE is vicariously liable under the doctrine of respondeat superior for the alleged sexual assault and battery by Linkous. Accordingly, BAE's motion to dismiss is **GRANTED** and Count II of Clehm's complaint is **DISMISSED.**

An appropriate Order will be entered.

9

Entered: July ~~22~~, 2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

10