CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2018

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| CARLA A. CLEHM | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:16-cv-00012 |
| | ) | |
| v. | ) | |
| | ) | |
| BAE SYSTEMS ORDNANCE | ) | By: Hon. Michael F. Urbanski |
| SYSTEMS, INC., et al., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on incarcerated defendant Joshua Linkous' pro se post-trial motion for a new trial or, in the alternative, relief from judgment, pursuant to Rule 59 and Rule 60 of the Federal Rules of Civil Procedure, respectively. ECF Nos. 224-227. This case arises from multiple instances of sexual assault and battery perpetrated by defendant Joshua Linkous ("Linkous") against plaintiff Carla Clehm ("Clehm") while both were employed by BAE Systems, Inc. at the Radford Army Ammunition Plant in Radford, Virginia. Linkous' plea of guilty on June 30, 2015, and concomitant conviction for abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1), estopped him from contesting liability as to the state assault and battery claim alleged in Count II of the Clehm's Complaint and Second Amended Complaint. See 18 U.S.C. § 3664(l). The civil trial on Count II, conducted on August 23, 2018, was therefore limited to the question of damages. The jury returned a verdict in favor of Clehm in the amount of $500,000 in compensatory damages and $250,000 in punitive damages. Linkous contends, among other things, that the verdict is excessive and requests the court to order a new trial or, in the alternative, grant him relief from judgment.

Linkous recites, albeit in a cursory and conclusory manner, a litany of grievances and exactly the same grounds in support of both motions. Clehm argues that Linkous' motions are entirely without merit and must be denied. The parties have briefed the issue making this matter ripe for the court's consideration. Upon a thorough review of the record and for the reasons set forth herein, Linkous' motions are **DENIED**.

## I.

In her action against defendant Joshua Linkous, plaintiff Carla Clehm alleged that while working at the Radford Army Ammunition Plant ("Arsenal"), she was sexually assaulted and battered on two occasions by Linkous. ECF No. 59, 3-4. From early 2014 to 2015, Clehm worked as a "helper" in the Tub House, a facility located within the Nitrocellulose Area of the Arsenal. Id. at 6. Linkous worked within this same area, but as a Nitrocellulose Chief Operator ("NCCO"), known colloquially as a "tub house chief." Id. at 4. Clehm was sexually assaulted by Linkous at work on two occasions, once on May 19, 2014, and again on or about June 5, 2014. Id. at 5-6. With respect to the May 19 incident, Clehm claims Linkous came up behind her as she was leaving a building at work and told her he needed to ask her something. When she tried to walk away, Linkous grabbed her clothing, pulled her towards him, and repeatedly questioned her about his wife's supposed infidelity. He then suggested they have sex as revenge against his wife. Clehm told Linkous that she was not interested and that she had to get back to her job. Linkous told Clehm to let him know anything she saw or heard and to keep in touch and so forth. A co-worker witnessed some of the incident (he interrupted the incident and spoke to Linkous), and later reported what he saw to human resources. Clehm was sexually assaulted and battered again by

Linkous on or around June 5 after visiting her locker. In the statement of facts

accompanying Linkous's guilty plea, Linkous admitted to the following with respect to the

June 2014 assault:

> In June 2014, I saw Victim 2 [Clehm] at her locker, near the
> break room in the Tub House. Victim 2 began to exit the Tub
> House. As she neared the exit, I grabbed her by the upper arm
> and dragged her into a room on the side of the Tub House
> where electrical circuit breakers are housed (the "breaker
> room"). I closed the door and turned off the lights. I pushed
> her against a control panel and pinned her down with my body.
> I forcibly kissed her, unbuttoned her coverall clothing, and
> kissed her breasts against her will. I put my hands inside her
> coveralls and touched her vaginal area over her underwear with
> my hand against her will.

ECF No. 59, at 5-6. Clehm claimed that during the June assault, she feared for her life and

was only able to leave when she told Linkous that coworkers were waiting for her.

Linkous pled guilty to criminal charges of sexual assault and battery of Clehm and

other female coworkers in United States v. Joshua Linkous. Case No. 7:15-cr-00016. Linkous

was subsequently sentenced on October 13, 2015, to 14 years incarceration. In the aftermath

of these events, Clehm suffered from various health issues, including migraines, inability to

focus, debilitating headaches, depression, anxiety, and panic attacks. Clehm began seeking

medical treatment for her stress at work and on August, 5, 2014, reported to her primary

care doctor that she had been sexually assaulted. ECF No. 154-26. Clehm later began

seeking psychiatric counseling from a licensed clinical social worker, as well as from BAE's

Employee Assistance Program. Clehm continued to struggle with fear, intrusive thoughts,

and difficulty sleeping. On March 28, 2016, she went out on short term disability leave with

BAE's approval. ECF No. 154-13; ECF No. 154-2, at 388, 400. She subsequently brought a

civil action against Linkous in connection with the conduct for which Linkous was convicted criminally. Pursuant to Rule 17(b) and (c) of the Federal Rules of Civil Procedure, the court appointed Thomas E. Strelka, Esq. to serve as guardian ad litem for Linkous in the civil action. On August, 23, 2018, following a one day trial limited to damages on Count II against defendant Linkous, the jury returned a verdict in favor of Clehm, awarding her $500,000 in compensatory damages and $250,000 in punitive damages. A total of eight witnesses appeared on behalf of Clehm, including family, friends, former co-workers, Dr. Russell W. Melton from the Carilion Clinic, and Betty Jones, a Women's Resource Center counselor who worked with Clehm following the May and June 2014 assaults.

Linkous has moved for the court to set aside the judgment entered on August, 27, 2918, and asserts a variety of grounds ostensibly supporting his motions for a new trial and for relief from judgment. He first claims that the amount awarded to the plaintiff was "grossly excessive." ECF No. 225, at 1. He attributes this excessive judgment to, among other things, the court's denying his October 16, 2018, motion to continue, ECF No. 198, which he claims prevented him from "properly assist[ing]" in his defense at trial "even with the assistance of my guardian ad litem." ECF No. 225, at 2-3. Linkous also maintains that his inability to have "regular and frequent" communication with his guardian ad litem, Thomas Strelka, Esq., contributed to the purportedly excessive verdict. Id. at 2. He further avers that his interests were "overly prejudiced" by being required to participate in the trial from a correctional facility and that he was denied the "opportunity to reasonably prepare for trial." ECF No. 227, at 1-2. The grounds presented in support of both motions are identical, indeed reproduced verbatim in each motion. The court also notes that many of the grounds

proffered in Linkous's post-trial motions presently before the court are the same as those raised in his pre-trial motion to continue filed on the eve of trial, ECF No. 198, which the court denied. The court will address each of Linkous' claims in turn.

## II.

The grant or denial of a motion for a new trial is entrusted to and a matter resting in the sound discretion of the district court. Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir. 1988) (citing Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193 (4th Cir. 1967)). The motion may be granted, "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The United States Court of Appeals for the Fourth Circuit's list of acceptable grounds for which a court may exercise its discretion to grant a new trial includes: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. and Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996); Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998). "This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 432-33 (1996). To receive a new trial, the Fourth Circuit requires a finding that the jury verdict was made excessive by "passion and prejudice springing from indulgence, in the jury room, in such feelings, [that] may not be cured by a remittitur, but only a new trial." Bennett v. Fairfax Cty., Va., 432 F. Supp. 2d 596, 602 (E.D. Va. 2006) (citing Ford Motor

Co. v. Mahone, 205 F.2d 267, 273 (4th Cir. 1953)). In other words, absent evidence of

passion or prejudice by the jury, an excessive verdict alone is insufficient to grant a new trial.

See Ford Motor Co. v. Mahone, 205 F.2d 267, 273 (4th Cir. 1953) (finding that an excessive

verdict coupled with evidence that one of the jurors attempted to send a message to the

plaintiff's counsel while the trial was in progress, which was designed to aid him in his

conduct of the case, required a new trial); Allred v. Maersk Line, Ltd., 826 F.Supp. 965

(1993), 970 (E.D. Va. 1993), rev'd on other grounds, 35 F.3d 139 (4th Cir. 1994) (holding

that although the jury award of $1,000,000.00 was excessive, the court could not order a new

trial because there was no evidence that the verdict was the result of passion or prejudice);

Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and

Helpers of Am., 511 F.2d 839, 846 (4th Cir. 1975) (citing United Constr. Workers v. Haislip

Baking Co., 223 F.2d 872 (4th Cir. 1955), for the proposition that an excessive verdict based

on an improper jury instruction are grounds for a new trial). In reviewing a motion for a new

trial, the court must weigh the evidence and consider the credibility of the witnesses to

determine whether the verdict was against the clear weight of the evidence or was based

upon evidence that was false. Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001).

Where granting a new trial would be improper because there is no evidence of

"passion or prejudice" by the jury, a court may nonetheless require a remittitur if it

concludes that a verdict is excessive. Bennett v. Fairfax Cty., Va., 432 F. Supp. 2d 596, 599–

600 (E.D. Va. 2006). Under the practice of remittitur, "the trial court orders a new trial

unless the plaintiff accepts a reduction in an excessive jury award." Cline v. Wal–Mart Stores,

Inc., 144 F.3d 294, 305 (4th Cir. 1998). The court will first address Linkous' claim of

excessiveness as to the compensatory and punitive damages awards and determine the propriety of granting a remittitur under Virginia law. The court will then assess whether, despite its findings vis-à-vis excessiveness and remittitur under Virginia law, it should nevertheless set aside the judgments and grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Linkous' averments that are not directly related to the issue of excessiveness, namely that he was "overly prejudiced" by being required to participate from a correctional facility and his more generalized claim that he was "denied the opportunity to reasonably prepare for trial" will be addressed in the court's analysis of Linkous' alternative motion for relief from judgment under Rule 60.

## A.

The gravamen of Linkous' motions, both for a new trial and relief from judgment, is the alleged excessiveness of the jury's damages awards. The jury returned $500,000 in compensatory and $250,000 in punitive damages. The court will address the alleged excessiveness of the compensatory and punitive damages awards separately, as different standards apply in assessing each award. Where a motion for a new trial is based upon the alleged excessiveness of the jury's damages awards, federal standards apply to federal claims, but state law standards must be applied to state law claims. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 426–31 (1996); Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 280–81 (4th Cir. 1999); Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 279-80 (1989) (refusing to craft a federal common-law standard of excessiveness because "these are matters of state, and not federal, common law"). Thus, whether the jury's award of damages for the state tort claim of assault and battery in this

matter should be remitted or otherwise set aside as excessive is a matter of Virginia law.

Hughston v. New Home Media, 552 F. Supp. 2d 559, 565 (E.D. Va. 2008) (citing Stamathis

v. Flying J., Inc., 389 F.3d 429, 438 (4th Cir. 2004)).

Under Virginia law,

> [w]hen a verdict is challenged on the basis of alleged
> excessiveness, a trial court is compelled to set it aside 'if the
> amount awarded is so great as to shock the conscience of the
> court and to create the impression that the jury has been
> motivated by passion, corruption, or prejudice, or has
> misconceived or misconstrued the facts or the law, or if the
> award is so out of proportion to the injuries suffered as to
> suggest that it is not the product of a fair and impartial
> decision.'

Shepard v. Capitol Foundry of Virginia, Inc., et. al., 262 Va. 715, 718, 554 S.E.2d 72, 75

(2001) (quoting Edmiston v. Kupsenel, 205 Va. 198, 201, 135 S.E.2d 777, 780 (1964);

Poulston v. Rock, 251 Va. 254, 256, 467 S.E.2d 479, 481 (1996)); see also Smithey v. Sinclair

Ref. Co., 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961) (explaining that the jury award should

also be set aside if the jury misconceived the seriousness of the plaintiff's injuries). In making

this determination, the court must evaluate the evidence relevant to the issue of damages,

viewing such evidence in the light most favorable to the prevailing party – here Clehm.

Shepard, 262 Va. at 718, 554 S.E.2d at 75 (citing Poulston v. Rock, 251 Va. 254, 261, 467

S.E.2d 479, 483 (1996)). If there is evidence, when viewed in the light most favorable to

Clehm, to sustain the jury's $500,000 compensatory damages award, then remitting or

otherwise setting aside the award is error. Id. (citing Edmiston, 205 Va. at 202–03, 135

S.E.2d at 780).

**B.**

The Supreme Court of Virginia has held that physical harm and pecuniary losses are not required in order to sustain a substantial compensatory damage award and that "evidence of sorrow, mental anguish, and solace" are alone sufficient. Hughston v. New Home Media, 552 F. Supp. 2d 559, 567 (E.D. Va. 2008) (citing Shepard, 262 Va. at 723, 554 S.E.2d at 77); Snyder v. Fatherly, 158 Va. 335, 351, 163 S.E. 358, 364 (1932); Williams Printing Co. v. Saunders, 113 Va. 156, 180, 73 S.E. 472, 478 (1912). While the compensatory damages award in this case is substantial compared to other state and federal cases involving sexual assault and battery, the Supreme Court of Virginia specifically proscribes comparing damage awards as a means of measuring excessiveness. Allied Concrete Co. v. Lester, 285 Va. 295, 316, 736 S.E.2d 699, 710 (2013) (holding that trial court improperly based decision to grant remittitur on improper comparison of awards and failed to consider proper factors in evidence or to provide any way of ascertaining whether the reduced award bears a reasonable relation to damages suffered by the plaintiff); John Crane, Inc. v. Jones, 274 Va. 581, 594–95, 650 S.E.2d 851, 857–58 (2007) (refusing to apply the "average verdict rule" to overturn a verdict, holding that excessiveness determinations must be based on the facts and circumstances of each case, and collecting cases where the Supreme Court of Virginia declined to engage in a comparison of verdicts in assessing excessiveness); Rose v. Jaques, 268 Va. 137, 159, 597 S.E.2d 64, 77 (2004) (The thrust of . . . Mills' argument is that the jury's verdict is excessive when compared to other [post-traumatic stress disorder] cases, statewide and nationally. However, . . . Mills cites no other case where this [c]ourt has sanctioned a verdict comparison analysis as the measure of a verdict's excessiveness.); cf. Weihua Huang v. Rector & Visitors of Univ. of Virginia, No. 3:11-CV-00050, 2013 WL

865845, at *11 (W.D. Va. Mar. 7, 2013) ("The Fourth Circuit has clearly indicated that past awards should serve as guidelines for the trial judge to consider when deciding whether to grant a new trial nisi remittitur."); Hetzel v. Cty. of Prince William, 89 F.3d 169, 172 (4th Cir. 1996) (instructing the district court to "closely examine the awards [in two other cases], which we believe are comparable to what would be an appropriate award in this case").

Further, the Supreme Court of Virginia has repeatedly emphasized that the amount of a verdict is squarely within the jury's discretion, that it is inviolate when it is arrived at upon competent and proper instructions, and that all reasonable inferences must be drawn in favor of the verdict rendered when evaluating the appropriateness of the amount of a jury verdict. Showker v. Kratzer, 77 Va. Cir. 389, 389 (2009) (citing Richardson v. Braxton–Bailey, 257 Va. 61, 510 S.E.2d 732 (1999)). Virginia's highest court has also emphasized that "[i]f the verdict merely appears to be large and more than what the trial judge would have awarded had he been a member of jury, it should not be disturbed, because to do so would be to 'do what he may not legally do, that is, substitute his judgment for that of the jury.'" Smithey, 203 Va. at 146, 122 S.E.2d at 875. In sum, the law of Virginia establishes a formidable presumption against remitting or otherwise disturbing jury verdicts on excessiveness grounds. See Allied Concrete Co. v. Lester, 285 Va. 295, 317, 736 S.E.2d 699, 711 (2013) (McClanahan, J., dissenting) ("With this [c]ourt's ever evolving limitations upon the power and duty of trial judges to order remittitur, for all practical purposes the last nail in the coffin of remittitur has been driven . . . .").

Here, Linkous asserts that the $500,000 in compensatory damages awarded to the Clehm is "grossly excessive." There is no question that the award is substantial and at the

outer reaches of a reasonable jury verdict. Nonetheless, given all the facts and the severity of Clehm's alleged injuries, as well as the <u>sui generis</u> nature of injuries involving sexual assault and battery, it cannot be said that the award is so excessive as to warrant intervention by the court. Indeed, with the exception of his own conclusory statements alleging excessiveness, Linkous, revealingly, has failed to point to any specific evidence showing that the jury award was the result of "passion, corruption, or prejudice."[1] Nor does Linkous aver, for example, that the $500,000 award is against the weight of the evidence, disproportionate to the injuries suffered, or the result of a misconstrual of the facts or the law. Instead, Linkous attributes the allegedly excessive judgment to the court's refusal to grant his motion to continue, ECF No. 198, his inability to have regular and frequent contact with his guardian ad litem, and other issues largely tangential in adjudicating excessiveness.

To the extent Linkous was dissatisfied with the level of communication with Strelka, he should have raised this issue at trial. He did not. Indeed, when asked explicitly by the court whether he was fully satisfied with the work of his guardian ad litem, Linkous answered affirmatively. With respect to the motion to continue, and the related claim that he was "denied the opportunity to reasonably prepare for trial," Linkous moved to continue the trial four months after he was first notified of the trial date and just one week before the trial was due to commence. Not only was this eleventh-hour motion to continue filed unreasonably late, but Linkous also provided no explanation for what he intended to do with

---

[1] Linkous does claim that appearing by video conference from prison was prejudicial. However, the record does not permit the inference, nor does Linkous supply any factual basis for concluding, that the way in which Linkous appeared was so prejudicial as to justify a new trial. Indeed, to the extent Linkous claims that appearing from prison is intolerably prejudicial, he is effectively arguing that civil trials cannot proceed unless the court is able to procure the physical presence of incarcerated defendants. This is neither reasonable nor the law. See <u>United States v. Baker</u>, 45 F.3d 837, 843-44 (4th Cir. 1995); <u>Muhammad v. Warden, Baltimore City Jail</u>, 849 F.2d 107, 111–12 (4th Cir. 1988) (holding that a plaintiff inmate in a section 1983 action had no absolute right to be present at his jury trial).

any additional time to prepare for trial. In any event, these arguments are beside the point in assessing excessiveness, as they do not provide any basis for the court finding that the judgment was erroneous or fatally infected by passion, corruption, or prejudice.

Linkous also does not allege that the court was in error as to the admission of any of the evidence, jury instructions, or other relevant proceedings during the trial. In order to determine if the $500,000 verdict is one that is excessive enough to shock the conscience, it is necessary to look at the factors that would have influenced the jury to award the amount it did. The record reflects that the court instructed the jury as follows regarding compensatory damages:

### Instruction No. 20

The purpose of compensatory damages is to make the plaintiff whole — that is, to reasonably compensate the plaintiff for the damages she has suffered.

You may award compensatory damages only for injuries that the plaintiff proves were proximately caused by the defendant's conduct. The damages that you award must be fair compensation for all of the plaintiff's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for those injuries which the plaintiff has actually suffered or that the plaintiff is reasonably likely to suffer in the future.

Your award should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

The burden is on the plaintiff to prove by the greater weight of the evidence each item of damage she claims and to prove that each item was caused by the defendant. She is not required to prove the exact amount of her damages, but she must show

sufficient facts and circumstances to permit you to make a reasonable estimate of each item. If the plaintiff fails to do so, then she cannot recover for that item . . .

In determining the compensatory damages to which the plaintiff is entitled, you shall consider any of the following which you believe by the greater weight of the evidence:

(1) All financial loss which is a result of the injury to the plaintiff caused by the defendant;
(2) All physical injury the plaintiff suffered;
(3) All emotional injuries plaintiff suffered, including shame, humiliation, embarrassment, or indignity to her feelings that she suffered.

You may also consider in awarding compensatory damages the insulting character of the injuries, the defendant's reason for injuring the plaintiff, and any other circumstances which makes the injuries more serious, if any of these things are shown by the evidence.

Your verdict shall be for such sum as will fully and fairly compensate the plaintiff for the damages sustained as a result of the assault and battery.

**Instruction No. 21**

If you find that the plaintiff had a condition before the accident that was aggravated as a result of the incident or that the pre-existing condition made the injury she received more severe or more difficult to treat, then in your verdict for the plaintiff, she may recover for the aggravation and for the increased severity or difficulty of treatment, but she is not entitled to recover for the pre-existing condition.

ECF No. 21, at 21-23. In accordance with Virginia law and with the agreement of the

parties, the jury instructions expressly permitted the jury to consider "all emotional injuries

plaintiff suffered, including shame, humiliation, embarrassment, or indignity to her feelings,"

as well as the "insulting character of the injuries." ECF No. 216, at 23. Strelka did not object

to Clehm's request to add the "emotional injuries" language in Instruction Number 20, and

13

in fact conceded that emotional injuries are typically considered in an overall damages analysis. Moreover, similar instructions have been cited approvingly by the Supreme Court of Virginia. See, e.g., Baldwin, 273 Va. at 657-58, 643 S.E.2d at 705-706.

With respect to the alleged injuries, Clehm did not present any evidence of special damages, such as medical bills, lost earnings, etc. However, she testified in graphic detail about emotional suffering that resulted from the May and June 2014 assaults, and presented evidence that she sought psychiatric care and extensive counseling thereafter. The court will not recapitulate the entirety of Clehm's testimony regarding Linkous' conduct, but suffice it to say that there was sufficient evidence, viewed in the light most favorable to Clehm, to support the jury's finding by a "preponderance of the evidence" that she suffered considerable emotional harm and long-lasting trauma that was proximately caused by the assaults. ECF No. 216, at 17, 19, 20. With respect to the June 2014 incident in particular, Clehm was coming off a 16-hour shift after being "drafted" to work a double shift when her employer was unable to find anyone else to work that day. When her shift ended, at which point she was understandably "exhausted," she returned to her locker to put her supplies away. Clehm testified that she saw Linkous in the hallway and tried to avoid him by walking away. However, shortly after exiting the locker room, Linkous grabbed Clehm, dragged her into a "little dark control room," closed the door behind them, turned off the lights, and locked the door. He then fondled her breasts, started kissing her neck, reached for and started touching her vaginal area, and stated that he wanted to have sex with her. Clehm tried to resist, begged Linkous to stop, and was extremely fearful given Linkous's size and the fact that nobody else was around. Linkous pressed Clehm "really tight[ly]" against the

14

wall. Clehm testified that even if she had not just worked a 16-hour shift, she would not have had enough strength to push Linkous off of her.[2]

Clehm described her life after the attacks as "pure hell," and stated that she is always scared, constantly looking over her shoulder, and afraid of the dark. Clehm testified that following the assaults, she cannot sleep in her bedroom with her partner because the room reminds her of the small room into which Linkous dragged her. Instead, she sleeps on the couch in her living room. Clehm further testified to seeing multiple doctors and counselors in the aftermath of the assaults, including Dr. Russell Melton and counselor Betty Jones, many of whom wanted to prescribe her various sleep-related medications. Clehm also testified that she was unemployed for a significant period of time after the assaults, that Linkous' actions caused her relationship with her partner to fail, that she sought a temporary restraining order against Linkous, and that she purchased a firearm for protection.

There was also detailed testimony from Clehm's family, friends, and former coworkers regarding her emotional injuries, protracted anxiety, and the deterioration of her physical and mental health in the aftermath of the assaults. This testimony included, among other things, specific descriptions of Clehm barricading doors to prevent intrusions and her marked withdrawal from normal life. A former security guard at the Arsenal testified that Clehm approached him and, visibly scared and upset, told him that Linkous was harassing her and that she was scared to go to work. Tammy Mullins, the plaintiff's sister, described Clehm as unrecognizable shortly after the assaults, stating, "I didn't know who this person

---

[2] In an exhibit entered into evidence, Clehm stated that during the June 2014 assault, she was "just so terrified . . . he was going to rape me, kill me. Hell, I didn't know what he was going to do in that damn room." ECF No. 217-4, at 4.When she managed to escape from the room in which Linkous dragged her, she stated that "I wanted to die, I have never felt like a piece of low life crap." The court instructed the jury that it may consider these statements solely for the purpose of showing that Clehm reached out in writing to others about these episodes.

was." Mullins indicated that when she asked Clehm why she had pushed chairs and tables up against the door to her apartment, Clehm told her that she was sexually assaulted at work. Mullins further testified that Clehm often looked nervous and appeared to have "aged" and lost a lot of weight since the assaults. Clehm's mother, Cynthia Jenson, testified that following the assaults, her daughter was constantly fearful, jumpy, hyper-vigilant, and increasingly antisocial. Jenson indicated that Clehm will not turn her back to people and sits with her back to the wall so she can see who is coming. Patty Dennis, who is friends with Clehm, testified that when Clehm finally told her about what happened, Clehm appeared "scared to death." Dennis also noted that Clehm was scared to go out in public, lost a lot of weight, often appeared unkempt, and became a "recluse." Jason Blankenship, Clehm's partner, testified that Clehm cannot eat or sleep, is constantly scared and will not go anywhere by herself. In addition to these witnesses, Dr. Russell W. Melton testified about his diagnosis of Clehm with post-traumatic stress disorder. Finally, Betty Jones, a counselor at the Women's Resource Center in Radford, testified about her experience counseling Clehm. In short, the record indicates that Clehm sought medical treatment following the assaults, and exhibited physical manifestations of stress, including loss of sleep, marked weight loss, migraines, and nightmares. Clehm testified that she also experienced suicidal ideations, significant relationship difficulties, and prolonged unemployment related to debilitating flashbacks of the assaults and persistent fear of further sexual harassment in the workplace. The assaults also appeared to exacerbate Clehm's pre-existing mental health problems and were a frequent theme in many of her subsequent counseling sessions, which continued for years after the assaults. The jury was expressly instructed that recovery was permitted for any

aggravation of pre-existing conditions, but not for the pre-existing condition itself. ECF No. 216, at 24.

The reliability and credibility of Clehm's testimony and that of her corroborating witnesses did not go unchallenged. Strelka thoroughly cross-examined Clehm and her witnesses as to whether some, if not all, of the alleged depression, anxiety, and emotional distress attributed to Linkous' conduct predated the assaults. This cross-examination revealed, <u>inter alia</u>, that Clehm had been (1) prescribed antidepressants to treat "tearful depression and anxiety," as well as migraines, beginning in 2007, (2) that her planner from January 2014, several months before the events of May and June 2014, indicated that she felt she was "living in misery," and (3) that her relationship troubles predated the assaults. Strelka further questioned Clehm as to the delay between the assaults and her reporting them to management, as well as probed the witnesses' potential biases, given their friendships and familial relationships with Clehm. Moreover, the court expressly instructed that "[o]ur system of law does not permit jurors to be governed by sympathy, prejudice, or public opinion." ECF No. 216, at 1. The jury was further instructed that the parties, the public, and the court expected them to "carefully and impartially consider all the evidence case, follow the law as stated by the court, and reach a just verdict regardless of the consequences." In sum, the jury was (1) fully apprised of the strengths and weaknesses in Clehm's case for damages, (2) properly instructed at the conclusion of the trial, and (3) entitled to determine the weight to be given properly admitted evidence. It was within the jury's province to accept or reject the various witnesses' testimony as to the alleged effects of Linkous' conduct

on Clehm's physical and mental health, and they apparently were convinced by testimony that she was profoundly affected by the assaults.

The court finds that the issues were fully and fairly tried, and that the jury could reasonably arrive at the award in this case absent passion, corruption, or prejudice (of which there is no evidence), and with an accurate understanding of the issues of fact and the law before it. The jury had the opportunity to hear all of the testimony and assess the credibility of Clehm and her respective witnesses. It cannot be said that given the cumulative evidence of emotional harm adduced at trial that $500,000 is out of proportion to Clehm's emotional injuries, or otherwise indicative of unfairness or misconception. While a much smaller award would also have been reasonable, without additional evidence showing that the challenged damages award was the product of some sort of proscribed influence or other misapprehension of the case by the jury, the court cannot simply grant a new trial or remit the verdict because it is more than the court would have awarded. See Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 580, 709 S.E.2d 163, 174 (2011) ("The trial court must accord the jury verdict the utmost deference."); Bennett v. Fairfax Cty., Va., 432 F. Supp. 2d 596, 600 (E.D. Va. 2006) ("The jury verdict must stand '[i]f there is evidence on which a reasonable jury could return a verdict in favor of the nonmoving party.'"); Stebbins v. Clark, 5 Fed.Appx. 196, 202 (4th Cir. 2001) (holding that courts "must treat a jury's verdict with great deference and respect" and "must not set aside a verdict as either inadequate or excessive merely because the district court would have acted differently if it had been the trier of fact or because the jury could have come to a different conclusion that the trial judge feels was more reasonable"). In sum, the court finds that the

compensatory damage award assessed by the jury against Linkous is not excessive under Virginia law given the circumstances and evidence presented in this case, and therefore does not warrant an intrusion by the court.

Insofar as quantifying or placing a value on emotional injuries is fraught with difficulty, it is in these types of cases that the estimation of damages is part of the essence of the jury's function. See Homesley v. Freightliner Corp., 61 F. App'x 105, 117 (4th Cir. 2003) ("We defer to a jury's award of damages for intangible harms, such as emotional distress, because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses."); Fox v. Gen. Motors Corp., 247 F.3d 169, 179-80 (4th Cir. 2001) (upholding $200,000 compensatory damages award in hostile work environment claim where plaintiff testified that he suffered anxiety, severe depression, and worsening of his already fragile working condition); see also Bogle v. McClure, 332 F.3d 1347, 1359 (11th Cir. 2003) ("The standard of review for awards of compensatory damages for intangible, emotional harm is deferential to the fact finder because the harm is subjective and evaluating it depends considerably on the demeanor of the witnesses."). Irrespective of whether the court itself would have awarded such a large verdict had it been a member of the jury, given the testimony as to the specific nature of the alleged emotional suffering, the $500,000 award does not shock the conscience of the court for excessiveness and therefore is neither excessive nor warrants remittitur under Virginia law. See Baldwin v. McConnell, 273 Va. 650, 659, 643 S.E.2d 703, 707 (2007) (finding the trial court to have abused its discretion by granting remittitur and that $240,000 in compensatory and $100,000 in punitive damages was not unreasonable or out of proportion for "shame, humiliation, embarrassment or indignity"

where a party was knocked down during an altercation with a co-worker and reported, <u>inter alia</u>, an "insult to his dignity"); <u>see also</u> <u>Myers v. Cent. Fla. Investments, Inc.</u>, 592 F.3d 1201, 1213 (11th Cir. 2010) (upholding a $610,469.84 judgment for emotional harm where plaintiff endured humiliation and was drained of her desire to go to work as a result of unwanted sexual touchings in the workplace from a boss "taking advantage of his employee over an extended time frame"). In sum, and as previously stated, the court discerns no reason to substitute its judgment for that of the jury as to the amount of damages necessary to compensate Clehm's emotional injuries.[3]

**B.**

Linkous also asserts that the punitive damages award levied against him is excessive. "In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law . . . ." <u>Browning–Ferris Industries v. Kelco Disposal</u>, 492 U.S. 257, 278 (1989). "'The purpose of compensatory damages is to make the injured plaintiff whole for losses actually suffered, whereas punitive damages serve to 'punish the defendant for malicious conduct or to display to others an example of the consequences they may expect if they engage in similar conduct.'" <u>King v. McMillan</u>, 594 F.3d 301, 314 (4th Cir. 2010) (citing <u>F.B.C. Stores, Inc. v. Duncan</u>, 214 Va. 246, 198 S.E.2d 595, 599 (1973)). In a lawsuit where, as here, state law provides the basis of

---

[3] Following a separate criminal restitution hearing, the court ordered Linkous to pay $38,315.32 in restitution to Clehm. Am. J., Case No. 7:15CR000016, ECF No. 88. Title 18 U.S.C. § 3664 (2000), which governs restitution orders, requires the court to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." § 3664(f)(1)(A); <u>United States v. Dawkins</u>, 202 F.3d 711, 715–716 (4th Cir. 2000). The statute contains a limited offset provision, requiring reduction of the restitution amount to take into account any amount later recovered as compensatory damages for the same loss by the victim in any federal or state civil proceeding. § 3664(j)(2). If Linkous is entitled to an offset in criminal restitution pursuant to § 3664(j)(2), such a reduction is only appropriate upon a motion for credit and after payments of the compensatory judgment have begun to be made to Clehm.

decision, the "propriety of an award of punitive damages for the conduct in question, and the factors the jury may consider in determining their amount, are questions of state law." Browning-Ferris, 492 U.S. at 278-79. In Virginia, "[t]he general rule is that there is no fixed standard for the measure of exemplary or punitive damages and the amount of the award is largely a matter within the discretion of the jury." Baldwin, 273 Va. at 659, 643 S.E.2d at 707 (citing Worrie v. Boze, 198 Va. 533, 95 S.E.2d 192, 201 (1956); Philip Morris, Inc. v. Emerson, 235 Va. 380, 368 S.E.2d 268, 287 (1988)).

"The societal and legal rationale for the imposition of punitive [damages] is punishment of an outrageous act." Henderson v. Huling, No. 4:16-CV-166, 2017 WL 4209761, at *5 (E.D. Va. Sept. 20, 2017) (citing Simbeck, Inc. v. Dodd–Sisk Whitlock Corp., 257 Va. 53, 58 (Va. 1999)). Thus, the "broad rule governing the award of punitive damages is that such damages may be recovered only when there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another." Id. Judicial review of the amount of punitive damages under Virginia law requires: "(1) consideration of reasonableness between the damages sustained and the amount of the award, (2) the measurement of punishment required, (3) whether the award will amount to a double recovery, (4) the proportionality between the compensatory and punitive damages, and (5) the ability of the defendant to pay." Baldwin, 273 Va. at 659, 643 S.E.2d at 707 (citing Poulston, 251 Va. at 263, 467 S.E.2d at 484). Furthermore, as with compensatory damages, "a jury's award of damages may not be set aside by a trial court . . . unless the damages are so excessive" as to "create the impression that the jury has been influenced by passion or prejudice or has in some way misconceived or misunderstood the facts or the

law." <u>Downer v. CSX Transp., Inc.</u>, 256 Va. 590, 507 S.E.2d 612, 614 (1998). Virginia Code § 8.01-38.1, however, states that for any action accruing on or after July 1, 1988, "[i]n no event shall the total amount awarded for punitive damages exceed $350,000." Va. Code Ann. § 8.01-38.1 (1991).

With respect to punitive damages, the court instructed the jury as follows:

### Instruction No. 24

If you find that the plaintiff is entitled to be compensated for her damages, and if you further believe by the greater weight of the evidence that the defendant acted with actual malice toward the plaintiff or acted under circumstances amounting to a willful and wanton disregard of the plaintiff's rights, then you may also award punitive damages to the plaintiff to punish the defendant for his actions and to serve as an example to deter him and others from acting in a similar way.

"Actual malice" is a sinister or corrupt motive such as hatred, personal spite, ill will, or a desire to injure the plaintiff.

### Instruction No. 25

Any award of punitive damages you may choose to impose should take into account the reprehensibility of the conduct, the harm caused, the defendant's awareness of the conduct's wrongfulness, the duration of the conduct, and any concealment. Thus, any penalty imposed should bear a relationship to the nature and extent of the conduct and the harm caused, including the compensatory damages award.

Any penalty imposed should take into account as a mitigating factor any other penalty that may have been imposed or which may be imposed for the conduct involved, including any criminal penalty arising out of the same conduct.

The amount of any penalty may focus on depriving the defendant of profits derived from the improper conduct and on awarding the costs to the plaintiff of prosecuting the claim.

> Additionally, any penalty must be limited to punishment and thus may not effect economic bankruptcy. To this end, the ability of the defendant to pay any punitive award entered should be considered.
>
> If you award punitive damages, you must state separately in your verdict the amount you allow as compensatory damages and the amount you allow as punitive damages.
>
> Finally, let me be clear. I have just given you instructions on punitive damages. You should not infer from these instructions that I have any view as to whether punitive damages should be awarded in this case or what amount of punitive damages should be awarded. That is for you to decide.

The jury awarded Clehm $250,000 in punitive damages. Not only did Linkous concede that he acted with actual malice in his answer, ECF No. 23, at 1, but there was overwhelming evidence presented of actual malice and willful and wanton behavior on the part of Linkous. In addition to those facts admitted in Linkous' guilty plea, Clehm testified in her own words that during the June 2014 assault, Linkous grabbed and pulled her into a "little dark control room," locked the door, turned off the lights, and began "kissing [her] neck," "continued to go down towards [her] breasts," and "had his hands in [her] pocket to [her] vagina," all against her will. Clehm further testified that she was "trying to push him off . . . but he had [her] against the wall and he's really big and had his body pressed up against [her], really tight up against the wall." There is no question that Linkous' actions were outrageous, malicious, or done with a "sinister or corrupt" motive. Indeed, the evidence suggests that Linkous was at least partially motivated by a desire to get revenge against his wife. Clehm's testimony demonstrates that she suffered significant indignities as a result of Linkous' conduct, causing her to feel immense shame, humiliation, and fear. The jury's punitive damage award, though

large, is neither as shocking as the conduct it seeks to deter nor unreasonable in the wake of the injuries the jury found were sustained.

With respect to the punishment required for Linkous' behavior and consideration of the deterrent effect upon others who may act in a similar fashion, the court cannot say that the award is excessive. The court instructed the jury that "[a]ny award of punitive damages you may choose to impose should take into account the reprehensibility of the conduct, the harm caused, the defendant's awareness of the conduct's wrongfulness, the duration of the conduct, and any concealment." Linkous' conduct evinced a conscious, egregious, and predatory disregard for Clehm's right to be free from unwanted, abusive sexual contact in the workplace. The jury was free to conclude that a severe punishment was appropriate under the facts of the case.

The jury's punitive damage award does not amount to a double recovery because the jury was instructed to base its award of compensatory damages on any damages Clehm actually suffered, including "[a]ll emotional injuries. . . shame, humiliation, embarrassment, or indignity to her feelings that she suffered" and to award punitive damages only if it believed Linkous acted with actual malice or a willful and wanton disregard of Clehm's rights. In doing so, the court underscored that the purpose of a punitive damages award is to punish the defendant for his actions and to serve as an example to deter him and others from acting in a similar way. In short, the jury was aware of the requirements for and purpose of awarding punitive damages. The court presumes that the jury follows the instructions of the court absent evidence to the contrary. Stamathis v. Flying J, Inc., 389 F.3d 429, 442 (4th Cir. 2004) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987). In light of the

pellucidly clear delineation of the basis for each award in the instructions and the reasonable basis supporting each award, the record does not suggest double recovery in this case. See Baldwin, 273 Va. at 659, 643 S.E.2d at 707.

Furthermore, the 2:1 ratio between the jury's $500,000 compensatory damage award and the $250,000 punitive damages award is not "unreasonable or strikingly out of proportion." Id. (citing Philip Morris USA v. Williams, 549 U.S. 346 (2007) (reaffirming United States Supreme Court precedent that "the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages . . . is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process.")). Here, the putative damages award is half the compensatory damages award and therefore falls well within the range the United States Supreme Court has held is likely to comport with due process. Thus, because the 2:1 ration falls within the constitutionally acceptable range, and below Virginia's statutory cap of $350,000, remittitur is not justified on the basis of proportionality. See BMW of N. Am. v. Gore, 517 U.S. 559, 573 (1996). Lastly, Linkous made no representations at trial, and makes no representations in any of his moving papers, that he is unable to pay the jury's award. The Supreme Court of Virginia has held that "while evidence of net worth is relevant . . . the lack of evidence of the wrongdoer's net worth does not itself defeat the punitive award." Flippo v. CSC Assoc., 262 Va. 48, 58, 547 S.E.2d 216, 226 (2001). Hence, any lack of mitigating evidence regarding Linkous's financial worth for the jury or court to consider is solely the fault of Linkous and will not serve to

reduce the punitive awards.[4] Indeed, the burden of proving financial worth is on defendants, as otherwise, "defendants would be free to exercise the strategically logical choice of abstaining from introducing such evidence and then challenging the propriety of any substantial award post-verdict." Kory v. McCluney, 59 Va. Cir. 74 (2002) (citing Markowitz v. Re/Max Preferred Properties, 42 Va. Cir. 292 (1997)); Showker v. Kratzer, 77 Va. Cir. 389 (2009) (noting that defendants have the greatest access to their financial information and any lack of evidence regarding financial worth or hardships will not serve to reduce punitive awards). In sum, the punitive damages award, like the compensatory award, is substantial, but not so substantial as to shock the conscience of the court or suggest the jury was influenced by passion or prejudice or in some way misconceived or misunderstood the facts or the law.

## C.

Notwithstanding the court's conclusion that neither damages award is excessive or deserving of remittitur under Virginia law, it must determine, by reference to federal

---

[4] In support of his motion for leave to proceed in forma pauperis, Linkous included in his application to the court financial information declared under penalty of perjury suggesting that he is unable to satisfy the judgments against him. ECF No. 223. The financial disclosures indicate that Linkous received approximately $13,000 in retirement funds, most of which he claims went toward child support and paying off another unspecified debt. Linkous claims to have no other assets. In evaluating the alleged excessiveness of a punitive damages award, Virginia courts have an affirmative duty to review the punitive damages award in light of the defendant's ability to pay as determined by his current financial worth, measured as salary plus assets. Showker v. Kratzer, 77 Va. Cir. 389 (2009) (citing Poulston v. Rock, 251 Va. 254, 264, 467 S.E.2d 479, 486 (1996). Indeed, "[e]vidence of the financial condition of a defendant is relevant on the issue of punitive damages and properly may be considered by the jury." Hamilton Dev. Co. v. Broad Rock Club, Inc., 248 Va. 40, 44, 445 S.E.2d 140, 143 (1994) (citing Weatherford v. Birchett, 158 Va. 741, 747, 164 S.E. 535, 537 (1932)). "In general, punitive damages should be sufficient to punish and deter a defendant but should not be so high as to destroy him financially." Showker, 77 Va. Cir. at 389 (citing Poulston, 251 Va. at 264, 467 S.E.2d at 486). "Therefore, punitive damages must be tailored with the net worth and unique financial status of [the] defendant in mind, to best achieve the desired pecuniary effect." Id. Notwithstanding the duty on the part of the court to consider the $250,000 punitive award in light of Linkous' ability to pay, the court is bound by the record before the jury. Therefore, despite the fact that Linkous' post-trial financial disclosures suggest his inability to pay, this information was not entered into evidence or otherwise considered by the jury and thus, consequently, cannot be considered by the court. Coalson v. Canchola, 287 Va. 242, 251, 754 S.E.2d 525, 529 (2014) (citing Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 581, 709 S.E.2d 163, 175 (2011) ("[A defendant who has failed to present evidence of his ability to pay at trial] cannot prevail before this Court on [his] claim that the amount of punitive damages would be oppressive.")).

standards developed under Rule 59 of the Federal Rules of Civil Procedure, whether a new trial should be ordered. Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). Under Rule 59 of the Federal Rules of Civil Procedure, a district court may set aside the jury's verdict and grant a new trial only if "'(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Bennett, 432 F.Supp.2d at 602 (citing Atlas Food Sys. & Servs., Inc., 99 F.3d at 594). "[T]o receive a new trial on liability and damages, the jury verdict must be made excessive by 'passion and prejudice springing from indulgence, in the jury room, in such feelings, [that] may not be cured by a remittitur, but only a new trial.'" Id. at 602 (quoting Ford Motor Co. v. Mahone, 205 F.2d 267, 273 (4th Cir. 1953)).

Importantly, because there is no evidence that the jury was swayed by passion or prejudice, a new trial would be inappropriate even if the court had found the damages awards excessive. Id. at 603 ("[W]ithout additional evidence of passion and prejudice by the jury, an excessive verdict alone is insufficient to require a new trial."). Not only is the court unable to discern any evidence of passion or prejudice, but Linkous also fails to direct the court's attention to any such influence on the jury. Instead, he relies entirely on unsupported, conclusory assertions, as well as on alleged errors of the court presiding over the proceeding. What is more, the substantial size of the awards alone does not mandate a new trial. Id. at 604 (adopting "the prevailing view . . . that the sheer size of a jury award does not, by itself, demonstrate that it was the result of passion or prejudice," especially "given the lack of a

palpable objective standard in the Fourth Circuit by which to measure awards for pain, suffering, and emotional distress").

Furthermore, as discussed at length <u>infra</u>, the jury's awards are not against the clear weight of the evidence. Linkous sexually assaulted and battered Clehm twice in her place of employment. Viewed in the light most favorable to Clehm, the testimony suggests that she suffered from severe emotional trauma as a result of Linkous' conduct and that this trauma persisted over an extended period of time. The court cannot conclude that the testimony and evidence adduced at trial is insufficient to support the judgments. Linkous does not claim that the verdicts were based on false evidence, and nothing in the court's review of the record suggests the awards were based on false evidence, thereby leaving the second prong unfulfilled. Lastly, allowing for the awards to stand will not result in a miscarriage of justice. The record reflects that the jury's awards comport with the court's instructions regarding compensatory and punitive damages, and the 2:1 ratio between the respective awards falls within the constitutionally acceptable range, and thus is not "unreasonable or strikingly out of proportion." <u>Baldwin</u>, 273 Va. at 659, 643 S.E.2d at 707. The jury had sufficient evidence before it to conclude that Linkous proximately caused severe emotional harm, and the court has previously concluded that the damages the jury awarded were not excessive. Thus, Linkous fails to meet the third prong. In sum, the record contains sufficient evidence supporting the jury's awards, there is no claim that the evidence produced at trial is false, and the awards are not strikingly out of proportion such that they fail to comport with due process. The facts and circumstances of this case do not warrant a new trial, therefore Linkous' motion is therefore **DENIED**.

# III.

In the alternative, Linkous moves for relief from the judgment rendered in this case pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, proffering the same grounds as those in his motion for a new trial under Rule 59. Federal Rule of Civil Procedure 60(b) authorizes a district court to grant relief from a final judgment for five enumerated reasons or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). While this catchall provision includes few textual limitations, its context requires that it may be invoked only in "extraordinary circumstances" when the reason for relief from judgment does not fall within the list of enumerated reasons given in Rule 60(b)(1)-(5). See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n. 11, 864 (1988). Indeed, in addition to the explicitly stated requirements above, the Fourth Circuit requires from the party filing the motion a preliminary showing of: (1) timeliness, (2) a meritorious claim or defense, (3) lack of prejudice to the opposing party, and (4) exceptional circumstances. See, e.g., Heyman v. M.L. Mktg. Co., 116 F.3d 91, 94 n. 3 (4th Cir. 1997); Holland v. Virginia Lee Co., 188 F.R.D. 241, 252 (W.D. Va. 1999) ("For a movant's case to succeed, the material offered in support of his Rule 60(b)(6) motion must be 'highly convincing.'"). If these threshold requirements are met, only then does the court examine whether any other reason justifies relief under Rule 60(b)(6). Dowell v. State Farm Fire & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993). If a movant seeks relief from judgment based on Rule 60(b)(6), he must show that his reason for seeking relief could not have been addressed on appeal instead. Aikens v. Ingram, 652 F.3d 496, 500–01 (4th Cir. 2011) (quoting Liljeberg, 486 U.S. at 863 n. 11 (1988)); see generally 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

Procedure § 2864, at 359–60 & n. 25 (2d ed. 1995) (collecting cases).[5] It is well established that granting relief from judgment pursuant to Rule 60(b) is a matter committed to the discretion of the district court. See Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 576 (4th Cir. 1973).

Linkous contends that he deserves relief from judgment for all the same reasons he averred as grounds ostensibly justifying a new trial. However, even if the court were to assume that Linkous meets all the Fourth Circuit's threshold requirements, he has failed to demonstrate any "extraordinary circumstances" under Rule 60(b)(6). While the legal theories within Linkous' pro se motions are difficult to discern, courts traditionally view pro se pleadings with "special judicial solicitude." See e.g., Harrison v. U.S. Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988); Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues."). However, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). Here, Linkous' claims amount to little more than bald assertions and unsubstantiated conclusions, and the court cannot make Linkous' arguments for him. This is especially true where, as here, the aperture for relief under Rule 60(b)(6) is extremely narrow. In short, Linkous' motion for relief from judgment is predicated upon: (1) the court's denial of his motion to continue,

[5] Chief Justice Rehnquist noted in his separate opinion in Liljeberg v. Health Services Acquisition Corporation that, "[t]his very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved. To give Rule 60(b)(6) broad application would undermine numerous other rules that favor the finality of judgments . . . ." 486 U.S. at 873 (Rehnquist, C.J., dissenting).

ECF No. 198, which he contends prevented him from "properly assist[ing]" in his defense at trial, ECF No. 225, at 2-3, (2) his inability to have "regular and frequent" communication with Strelka, Id. at 2, (4) his inability to "reasonably prepare for trial," ECF No. 227, at 1-2, and (4) prejudice resulting his being required to participate in the trial from a correctional facility. ECF No. 227, at 1-2. The court has already addressed most of Linkous' arguments infra, and at the risk of retreading old ground, will briefly address each of his claims in turn. Linkous' first three claims will be addressed collectively, and fourth "prejudice" claim separately.

## A.

With respect to the court's denial of the motion to continue, Linkous does not specifically allege how the court's denial of his eleventh-hour motion to continue constitutes an "extraordinary circumstance" warranting relief from judgment. Instead, he relies on vague and conclusory statements about his abstract need for more time without, for example, giving examples of the defenses that could have been asserted or identifying potential witnesses he could have called if given additional time to do so, or indicating how the substance of their testimony would have changed the outcome of the case. Linkous' vague allegation that he was "denied a reasonable opportunity to prepare" and was unable to adequately communicate with his guardian ad litem do not suffice to show he was prejudiced by the lack of additional time to prepare. Linkous moved to continue the trial four months after he was notified of the trial date and just one week before the trial was due to commence. The record indicates that Strelka was appointed by the court to serve as Linkous' guardian ad litem and filed a notice of appearance two years and four months before trial.

What is more, Linkous' liability was established and the only issue before the jury concerned the plaintiff's damages. In other words, the case was not particularly complex, lasting less than one day and involved only modest discovery. See United States v. Bush, 820 F.2d 858, 860–61 (7th Cir. 1987) (holding that the district court did not abuse its discretion in denying a continuance when the defendant had three months to prepare for a simple case, with one defendant, in a trial that lasted three days). Indeed, Linkous represented to the court that he was fully satisfied with Strelka's representation of him and did not raise any of the aforementioned issues at trial or reassert any of the concerns contained in the motion to continue which the court denied. Without a clearer explanation from Linkous of what, if any, hardship accrued as a result of the court's refusal to grant the continuance in question, the court cannot conclude that he was prejudiced by said refusal.

**B.**

With respect to Linkous's claim that he was "overly prejudiced" by being required to participate in his civil trial from prison, the court acknowledges at the outset that ideally, of course, Linkous would have appeared in person. Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 111–12 (4th Cir. 1988) (explaining that "[n]ot only the appearance but the reality of justice is obviously threatened" by an inmate's absence for his own trial). However, an incarcerated litigant's right to be present at the trial of a civil action is not absolute. That right is qualified by "countervailing considerations of expense, security, logistics, and docket control that prevent according prisoners any absolute right to be present." Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 111-12 (4th Cir. 1988) (citing Price v. Johnston, 334 U.S. 266, 285-86 (1948) (incarceration is a valid basis for qualifying the right personally

to plead and manage one's own cause in federal court)); see also Wolff v. McDonnell, 418 U.S. 539, 576 (1974). The Fourth Circuit has held that district courts should consider, at a minimum, (1) whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative; (2) the expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial; and (3) the likelihood that a stay pending the prisoner's release will prejudice the plaintiff's opportunity to present his or her claim, or the defendant's right to a speedy resolution of the claim. Hawks v. Timms, 35 F.Supp.2d 464, 465–466 (D. Md. 1999) (citing Muhammad, 849 F.2d at 107). Ultimately, it is within the discretion of the court to determine whether incarcerated civil litigants should be present or otherwise transported for trial. Muhammad, 849 F.2d at 112. "[I]f securing the prisoner's presence, at his own or public expense, is determined to be infeasible," the court must consider "other reasonably available alternatives." Edwards v. Logan, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999) (citing Muhammad, 849 F.2d at 111, 113); Joyner v. Byington, No. 7:15CV00526, 2017 WL 807208, at *1 (W.D. Va. Mar. 1, 2017).

Procuring Linkous' physical presence at trial or continuing the trial until his release were infeasible options. Linkous was incarcerated at FCI Butner in North Carolina, out of the district and several hours from the place of trial in Roanoke, Virginia. Moreover, because Linkous still had 11 years of prison time to serve at the time of trial, a stay was not appropriate. Given that the case was limited to the issue of Clehm's damages, logistics, security, and expense plainly outweighed Linkous' interest in being present at trial, given the availability of video conferencing. Indeed, Linkous did not express any intention to testify at

trial. All things considered, Linkous' participation in the trial via video conferencing from his place of incarceration was the most reasonable option. See Montes v. Rafalowski, No. C 09-0976 RMW, 2012 WL 2395273, at *2 (N.D. Cal. June 25, 2012) (holding that despite some drawbacks, "videoconferencing nonetheless facilitates plaintiff's meaningful participation at trial: plaintiff is able to testify, present evidence, and look each juror in the eye); United States v. Baker, 45 F.3d 837, 843 (4th Cir. 1995); see also Edwards, 38 F.Supp.2d at 467–68 (holding that "with video conferencing, [plaintiff] will be virtually present at his trial and will have the ability to confront witnesses, address the jury, and participate fully").

The court had successfully utilized video conferencing for pretrial proceedings, evidentiary hearings, and witness testimony for jury trials in the past. Upon inquiry, the court was advised that officials at FCI Butner in North Carolina where Linkous was confined were willing and able to arrange for his participation in the trial via video conferencing. On May 8, 2018, more than three months before trial, the court entered an order directing the Warden of FCI Butner to make Linkous available by video conference for trial and further directed the Warden to appoint a counselor or other correctional officer to serve as a designated contact for the courtroom clerk to initiate the video conference. ECF No. 190. Linkous raised no timely objection to this order, instead moving to continue the case a week before trial. Linkous was present by video conference for the entire trial. Further, Linkous was competently represented by his court-appointed guardian ad litem, Thomas Strelka, who provided him with extensive assistance throughout the litigation process. Strelka, assisted by Norvell Winston West, Esq., received responses to discovery requests, filed jury instructions and pre-trial motions, and managed pretrial disclosures on Linkous' behalf. He also served as

34

Linkous' trial counsel, presenting opening and closing statements, cross-examining witnesses, and objecting at various points to testimony and the admissibility of various exhibits. In other words, despite his physical absence, Linkous was still able to appear and was effectively represented throughout the trial. The record also demonstrates that Linkous was able to confer with his guardian ad litem privately at various points during the trial. Again, Linkous never asked to testify at trial. Therefore, as to Linkous' claim that his incarceration and inability to appear in person were prejudicial to his interests at trial, the court finds no evidence of this in the record.

In sum, Linkous has failed to provide support or explain in any detail his conclusory allegation contesting the jury's verdicts in this case. The court's own reflection on the trial and thorough review of the record lead it to conclude that Linkous' assertions are without merit, and nothing in his motion offers a "reason justifying relief" from judgment as required by Rule 60(b)(6). For the foregoing reasons, Linkous' motion for relief from judgment is **DENIED**.

## IV.

For these reasons, the court will **DENY** Linkous' motion for a new trial, ECF No. 224, pursuant to Rule 59, and his motion for relief from judgment, ECF No. 226, pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure.

An appropriate Order will be entered this day.

Entered: *12 – 14 – 2018*

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Chief United States District Judge

35